### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| AMGUARD INSURANCE COMPANY, | |
| Plaintiff, | Civil Action No.: 4:20-cv-01853 |
| vs. | |
| EARL HILL, BRANDON PYRTLE, T&J ENTERPRISES, INC., MICHELE A. HILL, THERESA PYRTLE, JEFFREY D. PYRTLE, DEBORAH MOSES, Individually, and as NEXT FRIEND of M. M., a Minor, | |
| Defendants. | |

## MEMORANDUM IN OPPOSITION TO DEFENDANT DEBORAH MOSES, INDIVIDUALLY AND AS NEXT FRIEND OF M. M.'S MOTION FOR *IN CAMERA REVIEW*

COMES NOW Plaintiff AmGuard Insurance Company ("AmGuard" or "Plaintiff"), by and through its undersigned counsel, and for its Memorandum in Opposition to Defendant Deborah Moses, Individually and As Next Friend of M.M.'s Motion for *In Camera* Review, states as follows:

### I.   INTRODUCTION

On April 4, 2022, Defendant Deborah Moses, Individually and as Next Friend of M.M. ("Defendant") filed a motion for *in camera* review requesting that AmGuard be ordered to produce privileged communications and work product contained in its claim file and listed on AmGuard's privilege log. Defendant's motion seeks documents that are privileged on multiple and various grounds, including privileged claim file materials, privileged work-product, privileged attorney-client communications, privileged insurer-insured communications, and privileged documents that occurred throughout the claims-handling process. In addition, Missouri law applies to substantive

privileges and federal law applies to the procedural privileges, but under both state and federal law, privileged documents can be protected even from *in camera* review and therefore Defendant's Motion should be denied in entirety for the reasons set forth below.

## II.   ARGUMENT

### A.   T&J Enterprises' Release/Waiver and Discoverability of Claim File

T&J Enterprises executed a Release and Waiver. (Doc. #70, p. 3). The effect of this waiver is in dispute between the parties. This waiver is immaterial as to Plaintiff since T&J Enterprises is not the privilege holder for matters within the scope of Defendant's present motion. In addition, T&J Enterprises relies upon an overbroad interpretation of the Missouri Supreme Court's holding in *Grewell v. State Farm Mut. Auto. Insur. Co.,* 102 S.W.3d 33 (Mo. 2003) in seeking the disclosure of documents that should be privileged.

In *Grewell,* the plaintiff filed a declaratory judgment action against his insurer seeking the contents of his insurance claims file pursuant to an automobile accident claim. *Grewell,* 102 S.W.3d at 34. The issue before the court was whether the insurer was required to provide the claim file to the insured. *Id.* The *Grewell* court found that the insured/insurer relationship is similar to that of attorney-client, and that in this particular circumstance, the insured should have been provided access to its claims file. *Id.* at 37. The court also noted that the "attorney/client relationship carries with it numerous duties and privileges" and that "the Court today refrains from recognizing all of those duties and privileges." *Id.* However, the scope of *Grewell* is case-by-case in nature and has been subject to further limitations and clarifications in the past nineteen years.

In particular, the *Grewell* claim file has been specifically limited in the Eastern District under the cases *Scottrade, Inc. v. The St. Paul Mercury Ins. Co.,* 2011 WL 572455 (E.D. Mo. Feb. 15, 2011) and *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.,* 2012 WL 1389708 (E.D. Mo.

Apr. 23, 2012).  These cases stand for the proposition that *Grewell* does not allow for the discovery of claim-file materials once the relationship between the insurer and insured becomes adversarial.

In *Scottrade,* the insured sued its insurer for denying its claim for losses sustained in connection with fraudulent hacking of its brokerage accounts. *Scottrade,* 2011 WL 572455 at 1. The two-count diversity action sought damages pursuant to state law for breach of contract and vexatious and untimely refusal to pay. *Id.* At issue was the plaintiff/insured's motion to compel discovery of certain materials, including its claims file. *Id.* The insurer had provided its privilege log asserting attorney client privilege and protection under the work product doctrine, and the insured sought access to its claims file based on *Grewell. Id.* *1-2.

The *Scottrade* Court narrowed the scope of *Grewell* and held that discovery of claim file materials is not permitted once the parties become adversarial. *Id.* At 4. In fact, the holding in *Scottrade* specifically noted that "*Grewell* did not address that issue, and in fact, the request for disclosure in Grewell involved contents of the claim file that were prepared before the parties became adversarial." *Id.* at 4.

The *Scottrade* Court reasoned that the *Grewell* Court simply "arrived at the unremarkable conclusion that an insured's claims file maintained by the insurer is not materially different than a client's file maintained by the attorney for the client," and as a result, the insured was entitled to access to its file in *Grewell. Id.* at *4. However, the *Scottrade* court went on to distinguish from *Grewell* that "it is a *different situation* altogether ... when the relationship between the insurer and insured breaks down because the insured denies coverage, and at that point, the insured can no longer be said to be working on behalf of the insured. Instead the insurer and insured are in *adversarial* positions, and to the extent the insured continues to maintain a claim file for the insured's case, any additions to the file *should be subject to attorney-client and work-product*

*privileges in favor of the insurer." Id.* at *5 (emphasis added). In other words, the *Scottrade* Court expressly limited the application of *Grewell* to situations when the insurer and insured are not adversarial. Once the relationship became adversarial, the claims file and additions thereto are "subject to attorney-client and work-product privileges in favor of the insurer." *Id.*

While the *Scottrade* court found that the relationship became adversarial at the time coverage was denied, the court acknowledged that an insurance relationship could become adversarial earlier, such as upon the hiring of outside counsel. *Id.* Regardless, *Scottrade* held that, after insurance relationship became adversarial, documents of the insurer were protected by the work product doctrine and/or attorney client privilege and were non-discoverable. *Id.*

The *Scottrade* court also noted that Missouri has adopted a broad, "all-encompassing application" of the attorney client privilege. *Id.* at 4. It also noted that "the work product doctrine is ... a matter of procedural law, and thus, governed by federal law." *Id.*, 2011 WL 572455 at *3. Moreover, it stated that "while ordinary work product is discoverable upon a showing of substantial need and inability to procure the protected documents from another source, opinion work product 'enjoys almost absolute immunity' and is generally only discoverable in 'very rare and extraordinary circumstances'." Id. at *2 (quoting *Baker* v. *General Motor*s, 209 F.3d. 1051, 1054 (8th Cir.2000)).

On another narrowing of *Grewell*, the court in *Lloyds* considered whether documents and communications of the insurer's claims staff, counsel and officers were discoverable. *Lloyd's,* 2012 WL 1389708 at 1. The court in *Lloyds* followed the holding of *Scottrade* and analyzed the issue of when the pertinent relationship became adversarial to determine whether the work product doctrine or attorney client privilege should be applied. *Id.* at 4.

4

In *Lloyds,* the court went further in defining when an insurer/insured relationship becomes adversarial. According to *Lloyds,* there is no "hard line approach" to when a relationship becomes adversarial, as it varies by the unique facts of each case. *Id.* (quoting *Med. Protective Co. v. Bubenik,* 2007 WL 3026939 at 3 (E.D. Mo. October 15, 2007). However, in *Lloyds,* the adversarial relationship began *prior* to the denial of coverage when the insured hired outside counsel, who had indicated coverage was in dispute and made threats of litigation.

In both *Scottrade* and *Lloyds,* the court found that the discoverability of materials in the claims files, and the applicability of the work product doctrine and attorney client privilege, depended on whether such materials were prepared after the relationship became adversarial. If so, the requested claim file discovery was barred.

### 3. Commencement of Adversarial Relationship

Under *Scottrade* and *Lloyds,* a threshold issue regarding Defendant's pending motion is whether the documents requested by Defendant were created after the relationship between AmGuard and T&J Enterprises became adversarial. If so, then the attorney-client and work product privileges would apply to bar their discovery, regardless of any waivers executed by T & J Enterprises. Here, it was disclosed shortly after the alleged accident that Michelle Hill was not an employee of T & J Enterprises. On April 23, 2020, AmGuard issued a reservation of rights correspondence and filed the Complaint for Declaratory Judgment before this Court on December 22, 2020 (Docs 1, 1-6). Thus, under *Lloyds* and as contemplated in *Scottrade,* the insurance relationship in this case became adversarial when AmGuard sent Defendants a Reservation of Right Letter and privileges apply to any materials generated after April 23, 2020.

### 4. AmGuard's Communications with Counsel

Additionally, the waiver signed by T & J Enterprises does not apply to AmGuard's

communications with its attorneys relating to its Reservation of Rights correspondence, even prior to April 23, 2020. For example, in *Starr Indem & Liab. Co.* v. *Cont'l Cement Co.*, 4:11CV809 JAR, 2012 WL 6012904, at 3 (E.D. Mo. Dec. 3, 2012), the defendant filed a motion to compel and sought an order requiring Starr Indemnity & Liability Company ("Starr") "to produce documents and answer deposition questions ... on (i) the advice of counsel upon which Starr claims to have relied in denying coverage for Continental's claims." The Eastern District found that Starr's communications with its counsel regarding the denial of the defendant's claim were protected by attorney-client privilege.

The attorney-client privilege protects confidential communications between an attorney and the client concerning matters regarding the representation. *Roth v. LaSociete Anonyme Turbomeca France,* 120 S.W.3d 764, 777 (Mo.App. 2003). As the Missouri Supreme Court held in *State ex rel. Great American Insurance Co. v. Smith*, 574 S.W.2d 379 (Mo. 1978), and contrary to the present allegations of Defendant, even an insurance company is entitled to confidential, privileged communications with its counsel. In *Great American*, the insurer retained attorney John Risjord and his law firm to assist in the investigation of a fire loss and represent the insurer in connection with the claims being asserted against it. *Id.* at 380. The insurer denied the fire loss claim on the basis that the loss was of an incendiary origin. *Id.* The insured filed suit alleging the insurer's refusal was vexatious and without reasonable cause. *Id.*

During depositions, the insurance company's representatives testified that they relied in part on letters from Risjord in making their decision to deny the claim. *Id.* at 381. The insurer refused to produce the letters as being protected by the attorney-client privilege. *Id.* After performing an in-camera inspection of the letters, the trial court ruled that the letters should be produced. *Id.* In overturning the decision of the trial court, the Supreme Court held:

> When a client goes to an attorney and asks him to represent him on a claim which he believes he has against someone or which is being asserted against him, even if he as yet has no knowledge or information about the claim, subsequent communications by the attorney to the client should be privileged. Some of the advice given by the attorney may be based on information obtained from sources other than the client. Some of what the attorney says will not actually be advice as to a course of conduct to be followed. Part may be analysis of what is known to date of the situation. Part may be a discussion of additional avenues to be pursued. Part may be keeping the client advised of things done or opinions formed to date. All of these communications, not just the advice, are essential elements of attorney-client consultation. *All should be protected*.

*Id.* at 384-85. (emphasis added.)

In reaching its decision, the Court noted that the plaintiff wanted the letters to learn what the attorney said to his clients about the claims he had been employed to handle on their behalf. *Id.* at 385. Plaintiff requested this information for use against the insurer on his claim for vexatious delay. *Id.* As a result, the Court held the plaintiff was not entitled to the attorney's opinion or advice. *Id.* at 386.

In addition, the Supreme Court refused plaintiff's argument that there should be an in camera examination of attorney-client communications to determine if any should be made discoverable by the court. *Id.* at 387. The Supreme Court concluded that such a rule should not be adopted: "The harm to the traditional attorney-client relationship which could result from permitting a trial judge to interrogate a lawyer or his client to learn what the attorney said in their conferences, or to examine the lawyer's letters to ascertain what he said to the client therein, in order to determine what portions thereof could be made available to the other parties...could, and we believe, would be considerable. It should not be permitted." *Id.*.

Here, just as in *Starr* and *Great American*, Defendant is seeking communications between AmGuard and its attorneys in which AmGuard was seeking legal advice on its own behalf and planning and preparing for anticipated litigation (Doc 70-2, p. 2-35). These communications are

clearly privileged and Defendant's motion should be denied, including Defendant's request for communications involving Plaintiff's attorneys J. Morris, D. Cominos, and R. Brown.

### B. Insurer-Insured Privilege

The communications between Peter Leritz, an attorney hired by Plaintiff to defend Michelle Hill under a reservation of rights, and North American Risk Services, Inc., should be protected on the basis of the insurer-insured privilege. Rule 501 of the Federal Rules of Evidence provides that evidentiary privileges are to be determined in accordance with state law in diversity actions. *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 402 (8th Cir. 1987). Missouri recognizes that "any communication between the insured and insurer which relates to the former's duty to report incidents and the latter's duty to defend and indemnify falls within the attorney-client privilege and is excluded from discovery under Rule 56.01(b)(1). *May Department Stores Co. v. Ryan,* 699 S.W.2d 134, 136 (Mo. Ct. App. 1985).

The general rule concerning the insured-insurer privilege is that, "a report or other communication made by an insured to his liability insurance company, concerning an event which may be the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for or assistance of the attorney in so defending him." *Grewell v. State Farm Insurance Co.,* 102 S.W.3d 33, 36-37 (Mo. 2003); *State ex. rel. Cain v. Barker,* 540 S.W.2d 50, 54 (Mo. 1976). When an insured makes statements to and concerned with their potential liability under an insurance policy to their insurance adjuster, those communications become subject to an attorney/client type privilege. *Id.* Any claims file that results is protected and immune from discovery. *Id.*

The filing of an initial incident report by the insured to the insurer triggers this privilege. *May*

*Department Stores Co. v. Ryan,* 699 S.W.2d. at 136. Any subsequent communication by the insurer to the insured concerning the insurer's duty to defend and indemnify is also privileged. *Id.* **This privilege applies even if, during the course of its investigation, the insurer ultimately decides to deny coverage under the policy** (emphasis added)**.** *See State ex. rel. L.Y. v. Davis,* 723 S.W.2d 74, 75 (Mo. Ct. App. 1986) (stating "if communications between insured and insurer are to be privileged only if the insurer ultimately admits coverage, there is no incentive for the insured to make full disclosure to his insurer"). All information that is covered by the insured-insurer privilege is not subject to discovery, absent a waiver. *May Department Stores Co. v. Ryan,* 699 S.W.2d at 136.

If the purpose of the communication is to secure legal advice from the client's attorney, the communication is not discoverable. *Saint Louis Little Rock Hosp., Inc. v. Gaertner,* 682 S.W.2d 146, 150-51 (Mo. Ct. App. 1984). As such, initial incident reports such as those contained in a claims file are generally immune from discovery as long as they were created with a view towards potential litigation and not in the ordinary course of business. *See State ex. rel. Cain v. Barker,* 540 S.W.2d at 54; *Enke v. Anderson,* 733 S.W.2d 462, 468 (Mo. Ct. App. 1987); *May Department Stores Co. v. Ryan,* 699 S.W.2d at 136.

**The insured-insurer relationship exists between parties by virtue of their contractual relationship.** *State ex. rel. L.Y. v. Davis,* 723 S.W.2d 74, 75 (Mo. Ct. App. 1986). Here, AmGuard hired Peter Leritz to defend Michelle Hill under a Reservation of Rights. In other words, by virtue of the agreement between Michelle Hill and AmGuard in which she accepted the defense that AmGuard offered to provide under a Reservation of Rights, an insured-insurer relationship existed and AmGuard's communications with Peter Leritz are protected by the insured-insurer privilege. Accordingly, the Court should not conduct an *in camera* review of these documents that are protected

by the privilege.

### D. Ordinary Claim Handling

The claims-handling materials in Plaintiff's privilege log are protected by privilege. Defendant also incorrectly claims in her motion that Plaintiff should not be permitted to redact communications relating to business activities (Doc 70, p. 5-7). In support of her argument, Defendant cites to *Workman v. Cincinnati Ins. Co.*, No. 2. 2:17-CV-00036 plc, 2017 U.S. Dist 199302 (E.D. Mo. Dec. 5, 2017).   However, Defendant's reliance on *Workman* is misplaced. *Workman* discussed the decision to retain counsel at the onset of a matter.  *Id*.  Correspondence referenced in Plaintiff's privilege log refers to the transfer of representation – clearly within the purview of litigation strategy and protected by attorney-client privilege and the work product doctrine. *Great American Insurance Co. v. Smith*, 574 S.W.2d 379 (Mo. 1978).

Defendant also alleges that Plaintiff improperly withheld an email chain with the subject "NARS Logo" between NARS and AmGuard claims adjusters and their retained counsel from Gordon Rees Scully Mansukhani.(Doc 70, p. 6). Again, this involves AmGuard seeking the advice concerning strategy but this does not mean that the attorneys were acting as claims adjusters and that this communication constituted regular business activities.

Defendant also alleges that that correspondence sent to the claim file by an unspecified AmGuard employee are not privileged (Doc 70, p. 6).  Defendant's reasoning is incorrect. Specifically, the attorney-client privilege encompasses documents prepared by an employee at the direction of the employer for the purpose of obtaining the advice of an attorney or for use in prospective pending litigation." *Ratcliffe* v. *Sprint Missouri, Inc*. 261 S.W. 3d 534, 547 (Mo. App. 2008). If an AmGuard employee makes notes that describe privileged communications between AmGuard and its attorney, such as summarizing the attorney's advice or recommendations,

discovery of that note would allow discovery of the contents of the communication itself, which is privileged information. For these reasons, no *in camera* review of these documents should be required given that these documents are privileged communications.

Defendant also vaguely asserts that "Counsel J. Morris participated in the factual finding of the claim investigation…" (Doc 70, p. 8). Again, AmGuard sought advice from its attorneys concerning strategy, but that does not mean the outside attorneys were acting as claims adjusters. In fact, Defendant's own citation states that privilege is not waived when an attorney acts as a "legal advisor." *Workman* v. *Cincinnati Ins. Co.*, No. 2:17-CV-00036 PLC, 2017 U.S. Dist. LEXIS 199302, at 8 (E.D. Mo. Dec 5, 2017). In sum, Defendant is requesting work-product under the guise of claim adjustment.

*Work Product*

Work product is a substantive Missouri law privilege that applies to prohibit disclosure of otherwise relevant information and documents from discovery. *Edwards v. Missouri State Board of Chiropractic Examiners,* 85 S.W.3d 10, 26 (Mo.App. 2002). Work product applies to two types of information: opinion work product and trial preparation materials. *Id.* Opinion work product concerns the party's litigation. It includes mental impressions, conclusions, opinions, or legal theories—not only of an attorney—but of a party himself, or any representative acting on his behalf. *Id.* Opinion work product is absolutely immune from discovery. *Id.*

Faced with a fact pattern similar to the instant case, the court in *Spear v. Davis,* 596 S.W.2d 499 (Mo.App. 1980), refused to allow defendant's discovery as to the mental impressions of the investigator. In *Spear,* the plaintiffs' mobile home was destroyed by fire after an explosion. *Id.* at 500. Their insurer, State Farm, sent its adjuster, Richard Kline, to the scene to conduct an investigation. *Id.* State Farm paid plaintiffs for their loss, and filed suit against defendant Sieve King,

11

Inc. for destruction of the mobile home. *Id.* The defendant filed a notice to take the deposition of Kline along with a subpoena duces tecum. *Id.* State Farm filed a motion for a protective order and a motion to quash the subpoena duces tecum by reason of the attorney-client privilege and work product privilege. *Id.* The trial court ordered that Kline's deposition could be taken concerning only matters which were not his own mental impressions. *Id.* In affirming the trial court, the Eastern District held that the work product doctrine is an absolute immunity from discovery of mental impressions, conclusions, opinions and legal theories of an attorney or other representatives of a party concerning the litigation. *Id.* at 500-01.

Here, Defendants are seeking documents which include the mental impressions, conclusions, discussions and legal theories of Plaintiff and its representatives. This is opinion work product, and is therefore absolutely immune from discovery. Furthermore, there is also no "substantial need" for Plaintiff's file. Nothing is stopping Defendant from asking these questions at a deposition. Accordingly, no *in camera* review of these materials should be required as these matters are clearly privileged from disclosure.

## F. Billing Information

Finally, Defendant alleges that Plaintiff should not have removed billing information (Doc 70, p. 9). However, Defendant again confuses the issue. In *Auto Owners Ins. Co. v. Blair Leasing, LLC*, No. 1:19-Cv-00066-SNLJ, 2020 WL 888319, at 1 (E.D. Mo. Feb. 24, 2020), the court noted that "billing statements which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of services performed, such as researching particular areas of the law, fall within the privilege." Here, Plaintiff's billing information does not merely relate to the payment made to Plaintiff's attorneys, it includes "Attorney Billing Narratives" which relate to the specific nature of the services performed. (Doc. 70-2). For these reasons, no *in camera* review

of these documents should be required given that these documents are privileged communications.

## CONCLUSION

Defendant wants to uncover the thoughts, impressions, and trial strategy from Plaintiff, its counsel, its claims staff concerning evaluative information and other privileged communication and material. Producing AmGuard's claim file for the subject claim in this scenario would be no different than requiring Mr. Grayson, as the attorney for Defendant, to turn over his entire file to AmGuard's For the forgoing reasons, Plaintiff AmGuard's Insurance Company respectfully requests that the Motion for In Camera Review filed by Deborah Moses, Individually, and as the Next Friend of M. M., be denied, and for such further relief as this Court deemed necessary under the circumstances.

Respectfully Submitted,

**GORDON REES SCULLY
MANSUKHANI, LLP**


*/s/James C. Morris*
James C. Morris, #53074MO
211 North Broadway, Suite 2150
St. Louis, Missouri 63102
Telephone: (314) 961-6686
Fax: (314) 338-3076
jmorris@grsm.com

*Counsel for Plaintiff,
AmGuard Insurance Company*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed electronically with the Clerk of the Court on this 14th day of April, 2022, thereby executing service upon all counsel of record by operation of the Court's electronic filing system.

By:    */s/James C. Morris*

1209696/66383647v.1