Exhibit A

# IN THE CIRCUIT COURT OF JACKSON COUNTY - INDEPENDENCE
# STATE OF MISSOURI

| | |
|---|---|
| In Re the Matter of: ) | |
| ) | **FILED** |
| DEBORAH MOSES, ) | **DIVISION 17** |
| Individually, and as Next Friend of ) | 27-Sep-2022  14:42 |
| MIRIAM MOSES, ) | CIRCUIT COURT OF JACKSON COUNTY, MO |
| a Minor, ) | BY  Savina A. Balano  DCA |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 2216-CV07062 |
| ) | |
| T & J ENTERPRISES, INC., ) | |
| individually and DBA T & J TOWING, ) | |
| ) | |
| Defendants. ) | |

## JUDGMENT

On July 18, 2022, this matter was called for trial in the Circuit Court of Jackson County, pursuant to prior notice. Plaintiffs appeared in person and through their counsel, Adam G. Grayson and S. Matthew Grayson. Defendant T & J Enterprises, Inc., individually and DBA T & J Towing, appeared through counsel, Jonathan Doss. The Court found all parties present, and proceeded to trial. After confirming the parties were ready to proceed to trial, the parties advised the Court that by agreement the matter would be tried to the Court in a bench trial through the introduction of evidence including affidavits, reports, exhibits, discovery responses, and other similar documentary evidence. The parties further advised the Court this was pursuant to a 537.065 agreement entered into by the parties prior to trial, premised upon a denial of insurance coverage to Defendant. The parties offered the Court the opportunity to review the 537.065 agreement and its terms, which the Court accepted.

Plaintiffs thereafter provided the Court a notebook of Exhibits which was introduced into evidence without objection. The trial then began with an opening statement, proceeded to the

presentment of evidence, and concluded with closing. Having heard considerable evidence and argument, the Court took the matter under advisement. Having now considered the evidence and argument, the Court hereby makes the following findings of fact, conclusions of law, and judgment in this case.

    I.        FINDINGS OF FACTS AND CONCLUSIONS OF LAW

    *A.*       *Underlying General Facts*

    1.       The parties advised the Court of the 537.065 agreement and offered to provide same to the Court for review. The Court reviewed this agreement, and did so prior to making these findings of fact, conclusions of law and Judgment.

    2.       Having reviewed the 537.065 agreement, the Court notes the agreement was negotiated with the benefit of counsel for both parties, and finds it in good faith, and exhibits no evidence of fraud or collusion. The Court finds that all the evidence submitted will be viewed in the same light, whether it be affidavit, medical records, evidentiary charts, or other.

    3.       Plaintiff Deborah Moses was born June 9, 1977. At the time of her injury on September 21, 2019 she was therefore 42 years old, and at the time of trial she was 45 years old.

    4.       Plaintiff Miriam Moses was born on December 10, 2010. At the time of her injury she was 8 years old.

    5.       Based upon the evidence presented, including information from the National Vital Statistics Report for 2017, the Court finds Mrs. Moses has a life expectancy of 38.0 more years from the date of trial, or 83 years of age.

    6.       At the time of the injury, Mrs. Moses worked as a cook. Mrs. Moses is married to Jeff Moses, and is the biological mother of two children, Miriam Moses and Jeffrey (Lee) Moses.

7. Plaintiff Miriam Moses is and was a minor child at all times relevant herein and appears by and through her court appointed Next Friend, Deborah Moses.

8. The operative pleadings in this case is the Petition. This petition asserts the following claims:

   a. Negligence against T & J Enterprises, Inc., individually and DBA T & J Towing regarding the manner in which Defendant operated, stored, secured, managed, controlled, or trained their employees in the use of their equipment; and

   b. Negligent Hiring/Retention against T & J Enterprises, Inc., individually and DBA T & J Towing regarding the manner in which Defendant trained, supervised, managed or controlled their employees or agents; and

   c. Respondent Superior against T & J Enterprises, Inc., individually and DBA T & J Towing regarding the master, T & J Enterprises, Inc., DBA T & J Towing is responsible for the acts of their agents and employees; and

   d. Negligent Entrustment against T & J Enterprises, Inc., individually and DBA T & J Towing regarding the manner in which Defendant operated, stored, secured, managed, controlled, or trained their employees in the use of their equipment.

   B.  *The Injury to Deborah Moses and Miriam Moses and Liability Determination*

9. The Court finds the evidence and testimony regarding the injury to Mrs. Moses and Miriam Moses and the liability for this injury to be consistent and clear. The Court considered all of the evidence submitted on this matter, but takes note and makes specific findings of the following in regard to the determination of liability.

10. On September 21, 2019 Mrs. Moses was living in Cherryville, Missouri, and employed as a cook at Spare Rib in Steelville, Missouri.

11. On September 21, 2019 Mrs. Moses and her daughter Miriam Moses were traveling on Missouri Highway 21 in Jefferson County, Missouri to a horse show when she was involved in a minor automobile collision. No one was injured in the collision.

12. The Missouri State Highway Patrol was called to the scene and T & J Enterprises, Inc., individually and DBA T & J Towing was contacted to recover the vehicles.

13. Earl Hill and his wife Michelle Hill arrived at the scene in two separate trucks owned by T & J Enterprises, Inc., individually and DBA T & J Towing.

14. Mr. Hill is a lifelong friend of the family that owns T & J Enterprises, Inc., individually and DBA T & J Towing. Mr. Hill began driving tow trucks for T & J Enterprises, Inc., individually and DBA T & J Towing when the owner's son got in trouble and T & J was short on drivers.

15. T & J Enterprises, Inc., individually and DBA T & J Towing paid Mr. Hill by purchasing car parts and by buying medical supplies on his behalf for driving their tow trucks.

16. On occasion, T & J Enterprises, Inc., stored at least one of their trucks at Mr. Hill's home on a regular basis. Mr. Hill lived two minutes from the T & J office and would walk down there a lot.

17. The remainder of the T & J Enterprises, Inc. tow trucks were stored at various places, unsecured and unlocked. Proper security cameras and fencing were not utilized.

18. The keys to the tow trucks were left in an unlocked vehicle in a glove.

19. At the time of this wreck, Mr. Hill was handling T & J Enterprises, Inc.'s police calls, when a regular driver was not available. The police departments would call the T & J headquarters and request recovery services. T & J would call or text the drivers on their cellular phones when they were needed to respond to a wreck.

20. T & J Enterprises, Inc. did not have an employees' manual or written policy pertaining to the work performed by their drivers.

21. Michelle Hill rides with Earl Hill to respond police calls. She has driven T & J Enterprises, Inc. tow trucks in the past. Michelle Hill would assist with and help load and hook vehicles.

22. T & J Enterprises, Inc., was aware Michelle Hill rode with Earl Hill on police calls and assisted with recoveries.

23. Neither Mr. Hill nor Mrs. Hill had any formal training or classes in operating tow trucks.

24. Michelle Hill knew how to operate the trucks, knew where the keys were stored and had access to them, and knew how the equipment and emergency lights worked.

25. Mrs. Hill and Mr. Hill would wear clothing with T & J Enterprises, Inc. logos.

26. On the day of Mrs. Moses's injury, T & J Enterprises, Inc., contacted Mr. Hill on an expedited call to respond to a two-vehicle wreck just down the road from Mr. Hill's home.

27. Mr. Hill and Mrs. Hill each drove a separate T & J Enterprises, Inc. tow truck to the scene of the wreck.

28. The T & J Enterprises, Inc. tow trucks arrived at the scene and Mr. Hill loaded the first vehicle and Michelle Hill loaded the second vehicle on her truck. Michelle hooked the vehicle on one side and Earl Hill hooked the vehicle on the other side. Michelle winched the vehicle and raised the tow truck bed.

29. The Missouri State Highway Patrolman advised Mrs. Moses and Miriam Moses to ride with the tow truck company as that would be the safest thing to do.

30. Deborah Moses and Miriam Moses climbed into the cab of the T & J tow truck.

31. Michelle Hill and Earl Hill communicated about the State Trooper requesting Mrs. Moses and Miriam ride with Michelle.

32. Earl Hill advised Michelle Hill to proceed down the road with Deborah and Miriam Moses.

33. As Michelle Hill began to accelerate the T & J tow truck, she became distracted. Michelle Hill took her eyes off the roadway. The tow truck veered off the roadway and rolled down a steep embankment.

34.     Debora Moses, Miriam Moses and Mrs. Hill were trapped inside the vehicle, hanging upside down.

35.     The evidence was overwhelming that on the date of Mrs. Moses's injury, Michelle Hill and Earl Hill were and had been acting as agents of T & J Enterprises, Inc., individually and DBA T & J Towing.  Further T & J Enterprises, Inc. was aware that Earl Hill and Michelle Hill operated their tow trucks for the purposes of responding to recovery calls and making money on behalf of the Defendants.

36.     Mrs. Moses and Miriam Moses sustained severe and permanent injuries as a result of T & J Enterprises, Inc., individually and DBA T & J Towing's actions.

37.     The employees/agents of T & J Enterprises, Inc., individually and DBA T & J Towing in operating a vehicle, hauling passengers, and allowing the tow truck to leave the driving surface of the roadway and roll down the embankment at the time of Mrs. Moses's injury were acting within the course and scope of their responsibilities as employees of T & J Enterprises, Inc., individually and DBA T & J Towing.

38.     The Court finds that Mrs. Moses's and Miriam's injuries were caused by a failure of T & J Enterprises, Inc., individually and DBA T & J Towing's employee/agents to operate their tow vehicles in a reasonable manner keeping the truck on the roadway.

39.     Additionally, the Court finds Mrs. Moses's and Miriam's injuries were caused by T & J Enterprises, Inc., individually and DBA T & J Towing failing to properly store their vehicles and equipment, and store and secure their keys and vehicles.

40.     The Court also considered for fault and liability purposes whether Mr. and Mrs. Hill were employees/agents of T & J Enterprises, Inc., individually and DBA T & J Towing.  Having considered the evidence, the Court finds credible evidence that T & J Enterprises, Inc. was aware that Mr. and Mrs. Hill operated their equipment for the purposes of conducting recoveries on behalf of the company for the purpose of making a profit.  Further the Court finds that T & J Enterprises, Inc. compensated them in the form of purchasing car parts for their work on behalf of the company.  Further the Court finds T & J

6

Enterprises, Inc., individually and DBA T & J Towing utilized Michelle Hill and Earl Hill to maintain business when other drivers were not available and to respond to police calls.

41. Based upon the above, the Court therefore finds the injury to Mrs. Moses was caused by T & J Enterprises, Inc., individually and DBA T & J Towing employees while driving Mrs. Moses and Miriam from the side of the roadway. Mr. Hill, one of the employees assisting with the recovery of the vehicles, confirmed that while they were trying to be cautious and exercise the proper care when responding to an expedited call by their employer as part of their duties, they negligently wrecked a T & J tow truck and injured Mrs. Moses and Miriam, which the Court finds consistent with the other evidence and testimony in the case.

42. The Court further finds that Michelle Hill and Earl Hill were acting as agents of Defendant when their conduct resulted in the injury to Mrs. Moses and Miriam.

43. The Court therefore finds that based upon the evidence, Mrs. Moses and Miriam sustained injuries while employees of T & J Enterprises, Inc., individually and DBA T & J Towing were recovering their vehicle from the side of the roadway.

44. The Court further finds that such negligence directly caused or directly contributed to cause damage to Mrs. Moses and Miriam Moses.

45. The Court therefore finds fault and liability against T & J Enterprises, Inc., individually and DBA T & J Towing, and in favor of Plaintiffs Deborah Moses and Miriam Moses. Further, the Court assigns such fault 100% to T & J Enterprises, Inc., individually and DBA T & J Towing, and 0% fault to Plaintiffs Deborah Moses and Miriam Moses.

  C. *Mrs. Moses's Injuries Resulting from the Tow Truck Wreck by Defendant*

46. The Court was provided considerable evidence regarding the injury to Deborah Moses. In regard to Mrs. Moses's injuries, the Court considered all of the evidence, but takes note and makes specific findings of the following.

47. After being extracted from the damaged tow truck, Mrs. Moses was taken from the scene by helicopter to Barnes-Jewish Hospital in St. Louis where she presented with pain and gross deformities of her lower extremities.

48. X-rays showed a right lateral condyle tibial plateau fracture, a right open tibial shaft fracture type II, a left comminuted bicondylar tibial plateau fracture, a left popliteal artery laceration/disruption, and a right kidney injury with perinephric hematoma.

49. The injury was to both Mrs. Moses's legs, which based upon the evidence the Court finds particularly significant to limiting mobility.

50. Mrs. Moses underwent multiple surgeries on the day she was admitted to the hospital including, a spanning external fixation of her left knee, four compartment fasciotomies of the left lower extremity, an arterial bypass of the left lower extremity for the popliteal artery injury, medullary nailing of the right tibia fracture, and irrigation and debridement of the open fracture of the right tibia.

51. Surgeries for the fracture in her legs included sedation, reduction, an external stabilizer, and implantation of hardware into both her legs.

52. The hardware implanted into Mrs. Moses remains currently in place and consists of surgical plates, bone screws and locking screws.

53. Mrs. Moses has significant scarring from this procedure.

54. Additionally, Mrs. Moses has scarring from being burned from the hot liquids dripping onto her legs from the motor of the T & J tow truck while she was trapped inside the truck.

55. Mrs. Moses underwent additional surgeries including irrigation and debridement of the left lower fasciotomies with closure of the left medial fasciotomy wound, a split-thickness skin graft left lateral fasciotomy wound, an open reduction internal fixation of the right lateral tibial plateau fracture, an open reduction internal fixation of the left bicondylar tibial plateau fracture, and a removal of the external fixator left lower extremity. In total, Mrs. Moses underwent thirteen surgeries as a result of her injuries.

56. Mrs. Moses spent several days in the hospital, and because she was immobile, she was transferred to a Barnes Jewish extended care facility for around the clock care.

57. Mrs. Moses was readmitted to Barnes-Jewish Hospital for right flank pain, vomiting, and a hematuria and she was found to have worsening hemorrhage around her right kidney and underwent a selective embolization.

58. She continued to have recurrent hemorrhage around her right kidney and underwent a repeat selective renal angiogram with the selective embolization to control the bleeding around her right kidney.

59. Finally, the doctors were left with no choice except to remove her kidney through laparoscopic nephrectomy.

60. After a consultation with therapy, Mrs. Moses began formal physical therapy to address problems caused by this injury to her legs including decreased range of motion, nerve disruption/injury, decreased sensation in her legs, decreased strength, decreased dexterity, stiffness, and pain.

61. Mrs. Moses had to relearn how to walk through the use of therapy. This condition was painful, limiting, and required additional therapy.

62. Mrs. Moses also engaged in additional therapy and exercise at home for rehabilitation of her injury.

63. Over this almost two-year period Mrs. Moses was in considerable discomfort and pain. While lessened somewhat, Mrs. Moses continues to have pain and discomfort from her injury, which will more likely than not continue for the rest of her life.

64. Additionally, due to the pandemic and staff shortages, Mrs. Moses was unable to receive all the necessary physical therapy to fully recover from her injuries.

65. Mrs. Moses was compliant with all the recommendations of her treatment team and followed these recommendations when it was available to her, through the present, and the Court finds Mrs. Moses likely to continue such treatment.

66. All of Mrs. Moses's medical treatment, care and therapy were reasonable, necessary, and a direct result of the injury she suffered during the wreck caused by T & J Enterprises, Inc., individually and DBA T & J Towing.

67. The uncontested medical testimony is that Mrs. Moses's deficits and problems from her injury are permanent and will continue for the rest of her life.

68. Based on the evidence, these deficits and problems include, but are not limited to:

   a. Loss of function and capacity in both her lower extremities;

   b. Weakness and fatigue in both her legs;

   c. Decreased mobility and use of her legs;

   d. Decreased sensation in her legs;

   e. Limitations in strength, and mobility for activities of recreation and home life;

   f. Decreased ability or inability to complete routine work related tasks;

   g. Impaired balance, increased fall risk, swelling in both knees, neuropathy in both lower extremities;

   h. Difficulty being on her feet for long periods of time, physical activity exacerbates her pain;

   i. Difficulty or inability to engage in tasks of daily life such as bathing, grooming, dressing, cooking, cleaning, driving, exercising, playing sports or other recreational activity; and

   j. Emotional distress.

69. Miriam Moses's legs were crushed underneath her mother's body in the rollover of the tow truck.

70. Miriam was taken to Children's Hospital in St. Louis, Missouri by helicopter on the day of the wreck.

71. The treating physicians diagnosed her condition as a comminuted right femur transverse fracture.

72. The next day Miriam underwent surgical repair of her right leg.

73. The doctors performed a procedure wherein they inserted two titanium elastic nails running the length of Miriam's femur to stabilize the bone.

74. Plaintiff Miriam Moses's past medical care totals $107,172.88. The Court finds this reasonable, necessary and the fair value of the medical care provided to Miriam Moses as a result of her injuries.

75. All of Miriam Moses's medical treatment and care were reasonable, necessary, and a direct result of the injury she suffered during the wreck caused by T & J Enterprises, Inc., individually and DBA T & J Towing.

76. Plaintiff Deborah Moses's past medical care totals $479,522.92. The Court finds this reasonable, necessary and the fair value of the medical care provided to Mrs. Moses as a result of her injuries.

77. Given the permanent nature of her injury, the uncontested medical evidence is that Mrs. Moses will require ongoing therapy and treatment for the deficits caused by her injury for the remainder of her life.

78. The evidence before the Court showed the most reasonable and likely cost of this necessary future therapy includes additional surgeries for the 38 years of Mrs. Moses's life expectancy.

79. Cori Ingram, a board certified Family Nurse Practitioner and Certified Nurse Life Care Planner opined that Mrs. Moses will require at least one popliteal bypass revision in her lower left extremity and one total knee arthroplasty.

80. Dr. Zachary Roberts, a board certified and practicing orthopedic surgeon in Kansas City, reviewed the life plan prepared by Mrs. Ingram. Dr. Roberts opined that due to the severity of the left knee injury, Mrs. Moses will require hardware removal and total knee arthroplasty for the left knee within the next 5-10 years. Given her current age of 45, she will likely require revision knee arthroplasty of her left knee to address component wear and related problems.

81. Dr. Roberts opined that post traumatic arthritis will progress in the right knee and necessitate hardware removal and right total knee arthroplasty within her lifetime.

82. Dr. Roberts stated within a reasonable degree of medical certainty, the recommendations regarding the ongoing treatment of her orthopedic conditions and future assistance with activities of daily living are appropriate.

83. Dr. John Westley Ohman, MD, a board certified Vascular Surgeon opined in his report within a reasonable degree of medical certainty, the aforenoted vascular injuries were caused by the second motor vehicle rollover, and the treatment received by Mrs. Moses was appropriate, reasonable, and necessary. Additionally, the medical bills and expenses were reasonable and necessary including those in the lifecare plan.

84. Dr. Kent Adkins, MD, a board certified Urologic Surgeon opined in his report within a reasonable degree of medical certainty, the aforenoted urological injuries and kidney injuries were caused by the second motor vehicle rollover due to antiplatelet therapy for the vascular injury, and the treatment received by Mrs. Moses was appropriate, reasonable, and necessary. Additionally, the medical bills and expenses were reasonable and necessary including those in the lifecare plan.

85. The evidence of future medical care caused by the injury therefore are $1,941,456.00.

86. The Court also heard evidence regarding future increased risk caused by the severity of Mrs. Moses's injuries. Such evidence is proper under Missouri law. See e.g. *Swartz v. Gale Webb Transportation Co.,* 215 S.W.3d 127, 131 (Mo. Banc 2007.) (Holding introduction of such evidence is considered a "well settled rule" to ensure a plaintiff receives the full compensation they are entitled to due to the injury suffered, as such injuries are by nature "worse" than those which do not have such increased risk); *Breeding v. Dodson Trailer,* 679 S.W.2d 281 (Mo. Banc 1984) (Same).

87. Such increased risks faced by Mrs. Moses include, but are not limited to:

a. Additional accidents and injuries due to the weakness currently existing in her legs;

b. Risk of further nerve damage;

12

      c.      Additional limited mobility, function and dexterity of her legs;

      d.      Surgery required to remove the hardware and revision surgery;

      e.      Additional difficulty in activities of daily living, recreation, performing her job;

      f.      Early onset post-traumatic arthritis.

88. John Ward, of John Ward Economics, reviewed Mrs. Moses's case to identify economic losses related to the need to estimate future medical costs at their present value. Mr. Ward made his estimation using generally accepted economic methods. The past and present discounted future value of Mrs. Moses's economic loss for her total future care is $2,448,250.00.

    D.    *Past Lost Wages/Earnings*

89. Based upon the medical evidence of the injury and ensuing limitations it has caused, the Court finds considerable basis that Mrs. Moses has more likely than not suffered lost wages/earnings in the past. While considering all of the evidence, the Court makes note of the following evidence regarding such losses.

90. Mrs. Moses confirmed that because of her injury, during the two years she was recovering, she was not able to participate in her work as a cook earning $13.00 per hour during a 40-hour shift, for past wage loss of $54,080.00 during that time.

    E.    *Non-Economic Losses to Mrs. Moses Caused by the Injury*

91. Beyond the impact this injury has had in the form of economic losses, and disabilities, the Court was provided significant evidence of the human losses suffered by Mrs. Moses due to her injury. The Court considered all of this evidence in reaching its verdict, and makes note of only a few items of specific evidence which the Court found particularly relevant.

92. Before her injury, Mrs. Moses was the independent home maker who cared for all of the necessities of the home and met her children's needs along with working a full-time job. After her injury, Mrs. Moses has been unable to keep up with all these tasks.

93. Mrs. Moses's family have seen and described how debilitating her injuries are at home, and the impact this has had on her own sense of self-worth as an independent woman.

94. Mrs. Moses is also under emotional distress and fear as it relates to her future health, as well as her ongoing ability to perform necessary life functions to take care of her family.

95. Mrs. Moses also must deal with ongoing and permanent pain and discomfort when doing nearly all of her work tasks, and the vast majority of tasks required by daily living.

96. Mrs. Moses has been required to have her mother do many of the activities she previously used to do.

97. Mrs. Moses has also suffered considerable embarrassment from her injury, whenever anyone sees her scars and asks her to explain what happened.

98. Mrs. Moses has also suffered a decrease in quality of life, as many things she liked to do, or wanted to do once she had the opportunity are difficult, painful, or otherwise impeded.

99. Mrs. Moses is no longer able to engage in recreational activity as she did before.

F.   *Damage Award to Mrs. Moses*

100. Considering all the above evidence, as well as the additional evidence submitted at trial, the Court assesses damages to Plaintiff Deborah Moses as follows:

| | |
|---|---|
| Past Medical: | $497,522.00 |
| Future Medical: | $2,448,250.00 |
| Past Loss Wages: | $54,080.00 |
| Total Economic Loss: | $2,999,852.00 |
| Scarring and Disfigurement: | $1,250,000.00 |
| Past Pain and Suffering: | $2,650,000.00 |
| Future Pain and Suffering: | $5,750,000.00 |
| Loss of Her Kidney: | $1,250,000.00 |
| Emotional Suffering: | $450,000.000 |

14

|  |  |
|---|---|
| Loss of Pleasures and Freedom: | $2,750,000.00 |
| Total Non-Economic Loss: | $14,100,000.00 |
| Total Damages: | $17,099,852.00 |

### G. Damage Award to Miriam Moses

101. In regard to Miriam Moses, the evidence showed that Miriam underwent a traumatic and invasive surgery to repair her right leg.

102. She suffered pain and a loss of mobility after the surgery.

103. Miriam Moses also underwent emotional distress and fear as it relates to her future health and collision of the vehicle accident.

104. Considering all of the above evidence, as well as the additional evidence submitted at trial, the Court assesses the damages to Plaintiff Miriam Moses as follows:

|  |  |
|---|---|
| Past Medical: | $107,172.88 |
| Past Pain and Suffering: | $945,000.00 |
| Emotional Suffering: | $450,000.00 |
| Total: | $1,502,172.88 |

### H. Judgment

105. Having made the above findings of fact and conclusions of law, it is hereby ordered, adjudged and decreed as follows:

106. Judgment is entered in favor of Plaintiff Deborah Moses and against Defendant T & J enterprises, Inc., individually and DBA T & J Towing in the amount of seventeen million, ninety nine thousand, eight hundred fifty two dollars and no/100 dollars ($17,099,852.00).

107. Judgment is entered in favor of Plaintiff Miriam Moses and against Defendant T & J Enterprises, Inc., individually and DBA T & J Towing in the amount of one million, five hundred two thousand, one hundred seventy two dollars and eighty eight cents ($1,502,172.88).

108. This Judgment is in the best interest of Miriam Moses.

109. This Judgment shall bear interest at a rate of 7% per annum until full satisfaction of the Judgment is made.

110. Plaintiffs did not present evidence of costs, and therefore each party is to pay its own costs.

111. Plaintiffs shall contact the Court's clerk and schedule a hearing to ensure compliance with Section 507.188.

| | |
|---|---|
| ___27-Sep-2022_____ | _____ |
| Date | Judge |